## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

*ELECTRONICALLY FILED*

| | |
|---|---|
| **PADUCAH SHOOTERS SUPPLY, INC.,** ) <br> a Kentucky corporation ) <br>     3919 Cairo Road ) <br>     Paducah, KY 42001 ) <br>                         ) <br>        *Petitioner,* ) <br> vs. ) <br>                         ) <br>                         ) <br> **ADAM P. ROGERS**, in his official capacity ) <br> as Acting Director of Industry Operations, ) <br> Louisville Field Division, Bureau of Alcohol, ) <br> Tobacco, Firearms, and Explosives ) <br>     600 Dr. Martin Luther King Jr. Place, ) <br>     Suite 500 ) <br>     Louisville, KY 40202 ) <br>                         ) <br>        *Respondent.* ) <br>                         ) <br>                         ) | Civil Action No.   5:23CV-88-BJB |

## VERIFIED PETITION FOR *DE NOVO* JUDICIAL REVIEW AND
## MOTION FOR PRELIMINARY INJUNCTION

Petitioner, Paducah Shooters Supply, Inc. ("Petitioner" or "Shooters Supply"), hereby petitions the Court, pursuant to 18 U.S.C. § 923(f)(3), for *de novo* judicial review of the ATF's revocation of Petitioner's license as a dealer of firearms, and, pursuant to Fed. R. Civ. P. 65(a) and requests that the Court grant injunctive relief in its favor, staying the effective revocation date of Petitioner's federal firearms license so that Petitioner may continue its operations pending judicial review.

## INTRODUCTION

1.      This is a Petition, pursuant to 18 U.S.C. § 923(f)(3) and its related regulations, for *de novo* judicial review of the revocation of its federal firearms license ("FFL") as a dealer in firearms, other than destructive devices (License Number 4-61-l45-07-3C-04096).

2.      Petitioner also requests injunctive relief to stay the effective revocation date of Petitioner's federal firearms license until *de novo* review is complete.

## JURISDICTION

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it arises under the Constitution and laws of the United States, specifically 18 U.S.C. § 923(f)(3).

4.      This Court has authority to award costs and attorney fees pursuant to 28 U.S.C. § 2412.

## VENUE

5.      Venue is proper in the Western District of Kentucky, pursuant to 28 U.S.C. § 139l (b)(2) and (e)(l)(B), as Petitioner's principal place of business is located within the district in Paducah, Kentucky, where a substantial part of the relevant events or omissions occurred.

## PARTIES

6.      Petitioner Paducah Shooters Supply is a corporation organized and doing business in Paducah, McCracken County, Kentucky. Shooters Supply maintains its principal place of business at 3919 Cairo Road, Paducah, Kentucky 42001. Shooters Supply is a dealer in firearms licensed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and has held such a license for many years (License Number 4-61-l45-07-3C-04096).

7.      Respondent, Adam P. Rodgers, ("DIO Rodgers") is sued in his official capacity as the Director of Industry Operations at the Louisville Field Division of the ATF. DIO Rodgers is responsible for overseeing the Industry Operations Inspectors ("IOI"), and attending revocation hearings, including the one at issue here. Petitioner's business operates within the jurisdiction of the Louisville Field Division and DIO Rodgers.

## STATEMENT OF FACTS

8.      Shooter's Supply has been in business for forty (40) years. It employs twenty-five (25) people. Originally a "mom and pop" shop, Shooter's Supply is now the fourth largest gun supply seller in Kentucky.

9.      In July 2022 ATF agents conducted a compliance inspection of Shooter's Supply and noted multiple documentation errors.

10.     The errors were primarily in record keeping. No crime was committed and no member of the public was endangered as a result of these errors. In all instances, the mistakes were unintentional.

11.     On December 2, 2022, a Notice to Revoke or Suspend License and/or Impose a Civil Fine, ATF Form 4500 (5300.4) ("Notice") was issued by DOI Rodgers to Shooters Supply concerning FFL Number 4-61-l45-07-3C-04096.

12.     Shooters Supply then filed a timely request for a hearing, pursuant to 18 U.S. C. § 923(f)(2), on December 15, 2022.

13.     On February 23, 2023, a hearing was conducted with regards to the above Notice. The following people attended: DIO Adam Rogers; ATF Division Counsel Mark Lowney; Industry Operations Investigator Mark Doran; and Roy Lynn McCutchen and Chance Clanahan, owners of Petitioner, Shooters Supply.

14.    On May 8, 2023, DOI Rodgers issued a Final Notice of Revocation of Firearms License ("Final Notice") to Shooters Supply, which included several written findings and conclusions. *See* **Exhibit A**. The Findings of Fact and Conclusions of Law are erroneous and unsupported by credible evidence. Specifically, although Shooter's Supply concedes that it made record keeping errors, it denies that those mistakes were willful, or the result of plain indifference.

15.    On May 23, 2023, the undersigned sent ATF Counsel a request for reconsideration of revocation, or in the alternative, a formal request for a stay of action on behalf of Shooters Supply. In so doing, Shooter's Supply pointed to additional facts to refute an inference of willfulness. *See* **Exhibit B**.

16.    On May 26, 2023, DOI Rodgers informed Petitioner that its request for a stay had been granted, providing a stay of revocation for 31 days starting on May 26, 2023, and ending on June 26, 2023. *See* **Exhibit C**. DOI Rodgers included the following condition on the Preliminary Stay: "*During the period that the revocation is stayed, the licensee will continue to comply with all laws and regulations pertaining to its Federal firearms license. Additionally, the licensee will no longer acquire firearms, only dispose (transfer or sell) of firearms.*" *Id.*

17.    On May 30, 2023, Petitioner again reached out DOI Rodgers through ATF Counsel, requesting an extended stay pending judicial review of Shooters Supply's petition. *See* **Exhibit D**.

18.    ATF imposes onerous record keeping requirements on federal firearm licenses.

19.    Congressional testimony shows that ATF cannot even comply with its own inventory control requirements.[1]

---

[1] Amy Swearer, *ATF Struggles to Prove That Its Priority Is Stopping Gun Crime, Not Furthering a Gun Control Agenda*, The Heritage Foundation (April 14, 2023), https://www.heritage.org/testimony/atf-struggles-prove-its-priority-stopping-gun-crime-not-furthering-gun-control-agenda.

20.    Shooter's Supply understands the importance of ATF's regulations. It has taken a number of steps to improve its compliance with those regulations.

21.    For example, Shooter's Supply has bought and implemented Axis software and an add-on that electronically completes and files ATF form 4473. This will immeasurably improve compliance by preventing human error to a large extent.

22.    In addition, Shooter's Supply has transferred the employee who was the source of most of the errors. ATF had specifically mentioned this idea to Petitioner, and it has been implemented. That employee will have no involvement whatsoever with firearms at the store.

### Count One: <u>Request for Declaratory Relief Pursuant to *De Novo* Review</u>

23.    Paragraphs 1-22 are incorporated by reference.

24.    Title 18 U.S.C. § 923(f)(3) provides that the United States District Court for the district of the principle place of business of the Petitioner shall have jurisdiction to hear Complaints for a *de novo* judicial review of the Attorney General's findings regarding the revocation of a firearms license.

25.    This Petition is timely filed within sixty (60) days of receipt by Shooter's Supply of said Final Notice. *See* 18 U.S.C. § 923(f)(3).

26.    Shooter's Supply seeks *de novo* judicial review pursuant to 18 U.S.C. § 923(f)(3) of all factual and legal issues by this Court pertaining to the ATF's revocation of its firearms license.

27.    The findings and conclusions of the Attorney General with respect to Shooter's Supply are erroneous and are not supported by the evidence.

28.     Shooter's Supply denies that any of the alleged violations were willful. To the contrary, the violations were inadvertent and occurred despite Shooter's Supply's efforts to comply. *See Armalile v. Lambert*, 544 F.3d 644, 646 (6th Cir. 2008).

29.     The Final Notice is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

30.     The action of ATF in declaring the revocation of Shooters Supply's FFL is in violation of federal law, is based on arbitrary and unreasonable interpretations of relevant federal regulations, and is based upon a misconstruction and misapplication of the legal standard for "willfulness" under the Code.

## Count Two: <u>Attorneys' Fees</u>

31.     Paragraphs 1-32 are incorporated by reference.

32.     The Gun Control Act provides in 18 U.S.C. § 924(d)(2)(B) for payment of the prevailing party's attorney fees resulting from ATF's actions under the Gun Control Act when such actions are found to be without foundation.

33.     The revocation of Shooter's Supply's federal firearms license was without foundation.

34.     Upon a resolution of this matter in favor of Shooter's Supply, it is entitled to attorney's fees under the foregoing statute.

## Count Three: <u>Attorneys' Fees – EAJA</u>

35.     Paragraphs 1-34 are incorporated by reference.

36.     The Equal Access to Justice Act was designed to remove financial obstacles and make access to justice available and affordable for those who have claims against the United States government. *See* 28 U.S.C. § 2412(d)(1)(A).

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

37.    The revocation of Shooter's Supply's federal firearms license was without substantial justification.

38.    Upon resolution of this matter in Shooter's Supply's favor, it is entitled to attorneys' fees under 28 U.S.C. § 2412(d)(1)(A).

## Count Four: <u>Violation of the Excessive Fines Clause</u>

39.    The Excessive Fines Clause of the Eighth Amendment prohibits "excessive fines imposed". U.S. CONST. amend. VIII. This clause traces its lineage to the Magna Carta. The Supreme Court has held that "[p]rotection against excessive punitive economic sanctions" is "fundamental" and "deeply rooted in this Nation's history and tradition." *Timbs v. Indiana*, 139 S. Ct. 682, 687-88 (2019) (cleaned up). Constitutional scrutiny still applies even if the fine is civil: "the question is not, as the United States would have it, whether [a monetary penalty] is civil or criminal but whether it is punishment." *Austin v. United States*, 509 U.S. 602, 610 (1993).

40.    There can be no doubt that revoking Petitioner's federal firearm license—thereby shutting its business down and forcing it to liquidate its inventory—is punishment. It is draconian punishment for record keeping mistakes that were innocently made despite Shooter's Supply's attempts to comply with ATF regulations.

41.    This revocation is effectively an excessive fine in contravention of the Eighth Amendment.

**Count Five: <u>Violation of Shooter's Supply's Second Amendment Rights</u>**

42.    Paragraphs 1-41 are incorporated by reference.

43.    The Second Amendment to the United States Constitution was ratified in 1791.

44.    The plain text of the Second Amendment covers the manufacture, purchase and sale of firearms and ammunition. The Second Amendment states, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

45.    The rights protected under the Second Amendment include the right to engage in the commerce and/or business of being a gun dealer, gun manufacturer and/or operating a gun range. *See*, *e.g.*, *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011).

46.    "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *See New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022).

47.    Under *Bruen*, the question of what the Nation's historical tradition of firearms regulation included is generally limited to the historical precedent at the time of the Second Amendment's adoption. *Bruen*, 142 S. Ct. at 2136 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them. The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates either date may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years.") (Cleaned up).

48.    As of 1791, there was no National historical tradition of government regulation or even licensing of firearms manufacturers, wholesalers, or dealers, let alone revoking a license for negligent record keeping errors.

49.    As of 1868, there was no National historical tradition of government regulation or even licensing of firearms manufacturers, wholesalers, or dealers, let alone revoking a license for negligent record keeping errors.

50.    *Bruen* declared unconstitutional under the 2nd and 14th Amendments a New York State handgun permit licensing scheme which vested subjective authority in government officials to approve or deny an application for a handgun permit. 142 S. Ct. at 2125-26.

51.    The ATF has subjectively deemed negligent record keeping errors as "willful" despite evidence showing that Shooter's Supply was endeavoring to improve its compliance program such as by purchasing expensive software and transferring the employee who made most of the errors.

52.    The *Bruen* holding, applied to the federal firearms licensing scheme in 18 U.S.C. § 923(a)-(d), requires that the determination of an applicant license eligibility (or by analogy, eligibility to retain the federal firearm license) be objectively assessed based on the statutory criteria set forth in 18 U.S.C. § 923(d). 142 S. Ct. at 2156.

53.    The *Bruen* holding, applied to the federal firearms licensing scheme in 18 U.S.C. § 923(a)-(d), prohibits the ATF from having any authority to deny an applicant's license application based on any subjective criteria or factors external to those enumerated in 18 U.S.C. § 923(d).

54.    The *Bruen* holding, applied to the federal firearms licensing scheme in 18 U.S.C. § 923(f)(3), requires that a court, when conducting a *de novo* review of the ATF's denial of an application for a federal firearms license (or, by analogy, to revoke an existing federal firearms

license), independently and without deference to the ATF's findings determine the facts and the law and to determine whether the objective eligibility criteria in 18 U.S.C. § 923(d) have been met. *Bruen*, 142 S. Ct. at 2123. If so, *Bruen* holding's rejection of governmental subjective assessments in licensing under the Second Amendment would require a finding that the ATF was not "authorized" to revoke the applicant's federal firearms license for record keeping mistakes made negligently.

### Count Six: <u>Request for Preliminary Injunction</u>

55.     Paragraphs 1 – 54 are incorporated by reference and re-alleged.

56.     A preliminary injunction should be entered:

a.) Petitioners are likely to succeed on the merits because the ATF has applied the wrong legal standard for willfulness as a matter of law and the facts negate any inference of willfulness;

b.) Petitioners are likely to suffer irreparable harm—the closure of their business—n the absence of preliminary relief; Shooter's Supply has 1657 firearms in inventory with a retail value of approximately $1,059,000. It is self-evident that termination of its business constitutes irreparable harm;

c.) the balance of equities tips in favor of Petitioners. The hardship on Shooter's Supply, in that its existence as a business would be terminated while judicial review is pending, is substantial. In contrast, there is virtually no hardship on the ATF if Shooter's Supply remains in business while judicial review is pending; and

d.) an injunction is in the public interest.

*See Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

57.     Petitioner is not required to prove its case in full at the preliminary injunction hearing. *Univ. of Tex v. Camensisch*, 451 U.S. 390, 395 (1981).

58.     "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *N. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012).

59.     Respondent has implemented a so-called "zero tolerance policy" as a pretext to shut down lawful businesses by revoking their federal firearms license.[2] Revocations of federal firearm licenses have increased by 500 percent.[3]

60.     Upon information and belief, ATF revoked more federal firearm licenses in February of this year (the month Shooter's Supply's hearing was held) than in decades.[4] Shooter's Supply was one of the victims of this arbitrary and capricious "oversight."

WHEREFORE, Paducah Shooter's Supply prays that this Court grant their Petition, conduct a *de novo* hearing, and enter an Order to:

61.     Stay the revocation of the federal firearms license until *de novo* review is completed.

62.     Allow discovery and supplementing of the factual record;

---

[2] Mark Oliva, *500 Percent Spike In Biden Administration Shutting Down Gun Retailers Over Typos* (June 3, 2022), https://thefederalist.com/2022/06/03/500-percent-spike-in-biden-administration-shutting-down-gun-retailers-over-typos/
[3] John Petrolino, *Gun dealer revocations increase 500% under Biden*, Bearingarms.Com (May 10, 2022), https://bearingarms.com/john-petrolino/2022/05/10/gun-dealer-license-revoked-500-percent-n58104.
[4] Amy Swearer, *ATF Struggles to Prove That Its Priority Is Stopping Gun Crime, Not Furthering a Gun Control Agenda*, The Heritage Foundation (April 14, 2023), https://www.heritage.org/testimony/atf-struggles-prove-its-priority-stopping-gun-crime-not-furthering-gun-control-agenda.

63.     Determine that the Respondent was not authorized to revoke their federal firearms license application;

64.     Determine that the Respondent has acted unconstitutionally, arbitrarily and capriciously in the establishment and/or application of standards for the license inspections, and that the denial in this instance was an unconstitutional act and that it was further an arbitrary and capricious abuse of any discretion that the Respondent may have had;

65.     Order the Respondent not revoke a federal firearms license to Shooter's Supply;

66.     Award Shooter's Supply their attorneys' fees and expenses in these proceedings pursuant to applicable federal law; and

67.     Award any additional or alternative relief, which this Court deems appropriate and just.

I, Chance Clanahan, owner of Paducah Shooter's Supply, hereby verify that I have reviewed the foregoing Petition and the statements contained are true and correct to the best of my information and knowledge.

This __15__ day of June, 2023.

CHANCE CLANAHAN

Respectfully submitted,

LANDRUM & SHOUSE, LLP

*/s/ R. Kent Westberry*
R. Kent Westberry, Esq.
Bridget M. Bush, Esq.
Hunter E. Rommelman, Esq.
LANDRUM & SHOUSE, LLP
220 W. Main Street, Suite 1900
Louisville, Kentucky 40202-1395
Phone: (502) 589-7616
Fax: (502) 589-2119
kwestberry@landrumshouse.com
bbush@landrumshouse.com
hrommelman@landrumshouse.com
*Counsel for Petitioner*

## **CERTIFICATE OF SERVICE**

It is hereby certified by undersigned counsel that the foregoing was filed on this 16th day of June 2023 through the federal Case Management Electronic Case Filing (CM/ECF) system which will generate a notice of electronic filing (NEF) to all users who have registered in this action:

Adam P. Rogers
Director, Industry Operations
Bureau of Alcohol, Tobacco, Firearms & Explosives
Louisville Field Division
600 Dr. Martin Luther King Jr. Place
Suite 500
Louisville, KY 40202

Benjamin Schecter
United States Attorney's Office, Civil Division
Western District of Kentucky
717 West Broadway
Louisville, KY 40202

*/s/ R. Kent Westberry*
**Counsel for Petitioner**