UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

PADUCAH SHOOTER'S SUPPLY, INC.                                    PETITIONER

v.                                              CIVIL ACTION NO: 5:23-CV-88-BJB

ADAM P. ROGERS, in his Official Capacity as
Director Of Industry Operations, Louisville Field Division,
Bureau of Alcohol, Tobacco, Firearms and Explosives            RESPONDENT

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

In 2011, 2015, and 2017, Bureau of Alcohol, Tobacco, Firearms and Explosives

(ATF) Industry Operations Investigators (IOIs) visited Paducah Shooter's Supply to

ensure it was complying with the relevant statutes, regulations, and rules and to

provide education about compliance. In 2015, IOIs cited Shooter's Supply for numerous

statutory and regulatory violations, including its inability to account for 19 firearms.

ATF held a warning conference with Shooter's Supply regarding the violations, and in a

follow-up letter, ATF notified Shooter's Supply that future violations could result in

revocation of its federal firearms license. In 2017, Shooter's Supply was cited again, but

for fewer violations.

In September 2022, an IOI again visited Shooter's Supply. The investigator

determined that Shooter's Supply failed to comply with many of the same statutory and

regulatory requirements that were not being followed in 2015. For example, Shooter's

Supply transferred three firearms without first contacting the National Instant Criminal

Background Check System (NICS) to confirm that the buyer was not prohibited from

possessing firearms. Shooter's Supply transferred firearms before completing ATF

Forms 4473, which memorializes the transfer of firearms. Shooter's Supply transferred

firearms without verifying the buyer's identity by reviewing current identification

documents or documenting that such a review occurred, and Shooter's Supply failed to

maintain is Acquisition and Disposition (A&D) record and could not account for twelve

different firearms, which were considered to be lost or stolen. Shooter's Supply

admitted all of those violations occurred.

On the basis of those violations, and after a hearing at which Shooter's Supply

had the opportunity to present evidence and cross-examine witnesses, ATF's Director of

Industry Operations for ATF's Louisville Field Division concluded that Petitioner

willfully violated the Gun Control Act (GCA) and that its Federal Firearms License

(FFL) should be revoked. A licensee, like Shooter's Supply, "violates the statute when,

with knowledge of what the law requires, it intentionally or knowingly violates the

GCA's requirements or acts with plain indifference to them." *Garner v. Lambert*, 345 F.

App'x 66, 71 (6th Cir. 2009) (quoting *Armalite v. Lambert*, 544 F.3d 644, 647 (6th Cir.

2008)). "A single violation of the GCA is a sufficient basis for denying an application or

revoking a firearms dealer's license." *Appalachia Res. Dev. Corp. v. McCabe*, 387 F.3d 461,

464 (6th Cir. 2004) (citing other cases). Further, while the Court's review of ATF's

decision is *de novo*, the Court's review is limited to determining whether ATF's decision

was "authorized." 18 U.S.C. § 923(f)(3). That is a narrower question. The Court should

not step into ATF's shoes, examine the evidence, and make its own decision whether

the GCA was violated. Rather, the Court should only consider whether "all of the

evidence presented is sufficient to justify" ATF's revocation of the FFL. *Morgan v. U.S. Dep't of Justice*, 473 F. Supp. 2d 756, 762 (E.D. Mich. Feb. 9, 2007) (citing other cases).

Here, Shooter's Supply was aware of the relevant statutes and regulations. Shooter's Supply admitted to violating in 2021 and 2022 the very same statutes and regulations it was cited for violating in 2015 (and for some in 2017). ATF's decision to revoke Petitioner's FFL is well-supported. Shooter's Supply cannot satisfy the standard for obtaining a preliminary injunction, and its motion should be denied.

## **FACTUAL BACKGROUND**

The facts of this matter are not in dispute. Petitioner has held an FFL for many years. [DN 1, ℙ 8.] In September 2022, an IOI conducted a compliance inspection at Shooter's Supply. The investigator found multiple violations of the GCA that Shooter's Supply did not contest. [**Exhibit 1,** September 26, 2022 Licensee Response to Violations Report (entered as Ex. 13 at February 23, 2023 hearing).] In December 2022, Shooter's Supply was issued a notice to revoke its FFL. [**Exhibit 2**, December 2, 2022 ATF Notice to Revoke License (entered as Ex. 1 at February 23, 2023 hearing).[1]] Shortly after ATF issued the notice of revocation, Shooter's Supply requested a hearing, [**Exhibit 3**, December 14, 2022 Request for Hearing (entered as Ex. 2 at February 23, 2023 hearing)] which was held on February 23, 2023 [**Exhibit 4**, Transcript from February 23, 2023 hearing)]. Shooter's Supply admitted to committing seven types of GCA violations. [*See*

---

[1] The names of the buyers are redacted because they are not relevant to this dispute and out of an abundance of caution to protect the buyers' identities. If the Court orders, Respondent will provide to it, or file in the record, an unredacted version of this document. Shooter's Supply was previously provided an unredacted version of this document.

*generally id.*; *see also* DN 1-1 at 3-7; **Ex. 1**.] Shooter's Supply acknowledged the same in its Petition, conceding that "it made record keeping errors." [DN 1 at 4.]

**Violation 1: Shooter's Supply Failed to Conduct NICS Checks.**

Shooter's Supply violated 18 U.S.C. § 922(t) and 27 C.F.R. §§ 478.102(a), (d)(1) by failing to conduct required background checks with the National Instant Criminal Background Check System (NICS) three times. [DN 1-1 at 4.] In each of those situations, Shooter's Supply refrained from conducting a required NICS check because the buyer supposedly possessed a valid Kentucky-issued permit to carry a concealed deadly weapon. However, each buyer's concealed deadly weapons permit was expired at the time of purchase. [**Ex. 2** at 2, 3; **Exhibit 5 (filed under motion to seal)**, ATF Forms 4473 related to Violation 1 (entered as Ex. 4 at February 23, 2023 hearing).[2]] Thus, Shooter's Supply was not excused from conducting a NICS check as it would have been if the Kentucky-issued concealed deadly weapons permit was active. Shooter's Supply was educated about the requirement to ensure that it only bypassed the NICS check requirement after verifying that the buyer possessed a proper concealed deadly weapon permit in 2015. [**Exhibit 6** at 2, November 9, 2015 Letter and Report of Violations (entered as Ex. 10 at February 23, 2023 hearing).[3]] Shooter's Supply was cited and

---

[2] Shooter's Supply possesses the original versions of all of the relevant ATF Forms 4473.

[3] The names of the buyers are redacted because they are not relevant to this dispute and out of an abundance of caution to protect the buyers' identities. If the Court orders, Respondent will provide to it, or file in the record, an unredacted version of this document. Shooter's Supply was previously provided an unredacted version of this document.

4

warned in 2015 because it improperly accepted a concealed deadly weapon permit that did not excuse a NICS check. [*Id.*]

**Violation 2:   Shooter's Supply Failed to Complete ATF Form 4473 for Each Firearm Transfer.**

Shooter's Supply violated 18 U.S.C. §§ 922(b)(5), (m) and 27 C.F.R. § 478.124(a) when it transferred a firearm without completing the required ATF Form 4473 and conducting a NICS check. [DN 1-1 at 4; **Ex. 2** at 2.] After looking into this issue, ATF learned that the firearm was transferred to Shooter's Supply's owner's son, who also worked at Shooter's Supply. [**Ex. 4** at 12-13.]

**Violation 3:   Shooter's Supply Failed to Ensure Each Buyer is Allowed to Purchase a Firearm.**

ATF Form 4473 contains a section in which each buyer must answer several questions related to past incidents that might disqualify the buyer from purchasing a firearm. [**Exhibit 7**, ATF Form 4473, Revised May 2020 (Form 4473 is regularly updated. The attached form was in use during the relevant time.).] A federal firearms licensee is responsible for reviewing these responses, which the buyer verifies are "true, correct, and complete," and refusing to sell a firearm if a disqualifiying response is provided by the buyer. A buyer is asked, for example, if he/she is under indictment for a felony; if he/she has ever been convicted of a felony; and if he/she has ever been committed to a mental institution. [*Id.* at 1-2, Question 21.]

Over the course of seven months, eleven different buyers either failed to completely answer all of the subparts of Question 21 in ATF Form 4473 that confirms he/she is not disqualified from purchasing, or the buyer provided a disqualifying

response. [DN 1-1 at 5; **Ex. 2** at 2, 3.] In two instances, buyers failed to provide responses

to any of the following questions:

| | | Yes | No |
|---|---|---|---|
| f. | Have you ever been adjudicated as a mental defective **OR** have you ever been committed to a mental institution? | ☐ | ☐ |
| g. | Have you ever been discharged from the Armed Forces under dishonorable conditions? | ☐ | ☐ |
| h. | Are you subject to a court order, including a Military Protection Order issued by a military judge or magistrate, restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? | ☐ | ☐ |
| i. | Have you ever been convicted in any court of a misdemeanor crime of domestic violence, or are you or have you ever been a member of the military and been convicted of a crime that included, as an element, the use of force against a person as identified in the instructions? | ☐ | ☐ |
| j. | Have you ever renounced your United States citizenship? | ☐ | ☐ |

[**Ex. 2** at 3; **Exhibit 8 (filed under motion to seal)** at 11, 17, ATF Forms 4473 related to

Violation 3 (entered as Ex. 5 at February 23, 2023 hearing).] Another buyer failed to

check "yes" or "no" next to subpart "f" above, and another buyer did the same with

subpart "h." [**Ex. 2** at 3; **Ex. 8** at 23, 29.] All of those buyers left those boxes unchecked,

yet signed their names just a little further down on the form. And despite not providing

information that could disqualify them from purchasing firearms, all of those

individuals obtained weapons. In another instance, a buyer answered "yes" to all of the

questions below, and he walked out of Shooter's Supply with a rifle.

| | | | |
|---|---|---|---|
| b. | Are you under indictment or information in any court for a **felony**, or any other crime for which the judge could imprison you for more than one year, or are you a current member of the military who has been charged with violation(s) of the Uniform Code of Military Justice and whose charge(s) have been referred to a general court-martial? | ☐ | ☐ |
| c. | Have you ever been convicted in any court, including a military court, of a **felony**, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? | ☐ | ☐ |
| d. | Are you a fugitive from justice? | ☐ | ☐ |
| e. | Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? **Warning:** The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside. | ☐ | ☐ |

[**Ex. 2** at 2, 3; **Ex. 8** at 25.] Shooter' Supply violated 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R.

§ 478.124(c)(1) by failing to obtain a complete and accurate ATF Form 4473 from each

buyer and by selling a firearm when the buyer provided disqualifying information.

In 2015, Shooter's Supply committed the same violations. [**Ex. 6** at 2; *see also* **Exhibit 9**, ATF Form 4473, Revised April 2012 (ATF Form 4473 was organized differently 2015. The questions listed above were then subparts of question 11.).] To address its failures, Shooter's Supply committed to corrective action, consisting of (1) completing Form 4473 for the buyer, (2) not serving another customer until Form 4473 was complete, and (3) designating an employee to review the Forms 4473 and to record the transfer of the firearms. [**Ex. 6** at 2.] Nevertheless, in 2021 and 2022, the same violations occurred again. And they did so in forms that were signed by at least four different employees. [**Ex. 8** at 12, 18, 24, 27, 30.]

> **Violation 4:   Shooter's Supply Sold Firearms to Buyers Who Affirmed They were Purchasing for Someone Else.**

ATF Form 4473 mandates that each buyer affirm that the firearm being purchased is not being acquired on behalf of another person:

| | Yes | No |
|---|---|---|
| 21. Answer the following questions by checking or marking either the "yes" or "no" box to the right of the questions: | | |
| a.  Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning:  You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person.   If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**  Exception: If you are only picking up a repaired firearm(s) for another person, you are not required to answer 21.a. and may proceed to question 21.b. | ☐ | ☐ |

[**Ex. 7** at 2.] The buyer—as well as the federal firearms licensee—is clearly notified that if the firearm is being purchased for someone else, the purchase should not be completed. Despite this instruction, Shooter's Supply transferred firearms to three individuals who responded "no" to the question above, violating 18 U.S.C. § 922(m) and 27 C.F.R. § 478.21(a). [DN 1-1 at 5-6; **Ex. 2** at 3; **Exhibit 10 (filed under motion to seal)** at 1, 4, 7, ATF Forms 4473 related to Violation 4 (entered as Ex. 6 at February 23, 2023 hearing).] Shooter's Supply was cited for committing this same violation in 2015. [**Ex. 6** at 2.] It

committed to the same corrective action steps in 2015 that are identified above under Violation 3.

> **Violation 5:  Shooter's Supply Sold Firearms Without Properly Verifying the Buyer's Identity.**

27 C.F.R. § 478.124(c)(3)(i) requires licensees to verify the identity of each buyer by examining an identification document and recording on ATF Form 4473 information from that document. For three buyers, Shooter's Supply did not record that it reviewed any identification document before transferring a firearm. In seven instances, Shooter's Supply recorded incomplete information showing that it reviewed an identifying document, or it relied on an identifying document that was expired at the time of purchase. [DN 1-1 at 6; **Ex. 2** at 3-4; *see, e.g.*, **Exhibit 11 (filed under motion to seal)** at 2-3, 8-9, 14-15, ATF Forms 4473 related to Violation 5 (entered as Ex. 7 at February 23, 2023 hearing).] Shooter's Supply violated the GCA in this same way in 2015, and it promised then to "be more careful" and to designate a specific employee to review ATF Forms 4473. [**Ex. 6** at 2.]

> **Violation 6:  Shooter's Supply Did Not Record that it Completed NICS Checks for Buyers.**

Unless a buyer presented a current Kentucky-issued concealed deadly weapon permit, Shooter's Supply was mandated by 27 C.F.R. § 478.124(c)(3)(iv) to record on the Form 4473 "the date on which the licensee contacted the NICS, as well as any response provided by the system, including any identification number provided by the system." The relevant section of Form 4473 is shown below:

| 27.a. Date the transferee's/buyer's identifying information in Section B was transmitted to NICS or the appropriate State agency: | | | 27.b. The NICS or State transaction number (if provided) was: |
|---|---|---|---|
| Month | Day | Year | |

| 27.c. The response initially provided by NICS or the appropriate State agency was: | 27.d. Prior to transfer the following response(s) was/were later provided by NICS or the appropriate State agency: |
|---|---|
| ☐ Proceed    ☐ Delayed<br>[The firearm(s) may be transferred on _____ if State law permits (optional)]<br>☐ Denied<br>☐ Cancelled | ☐ Proceed _____ (date)    ☐ Overturned<br>☐ Denied _____ (date)<br>☐ Cancelled _____ (date)<br>☐ No response was provided within 3 business days. |

[**Ex. 7** at 2.] Between August 2021 and June 2022, Shooter's Supply failed to provide all of that information for 20 buyers. [DN 1-1 at 6-7; **Ex. 2** at 3, 4; *see, e.g.,* **Exhibit 12 (filed under motion to seal)**, ATF Forms 4473 related to Violation 6 (entered as Ex. 8 at February 23, 2023 hearing).] For seven buyers, Shooter's Supply didn't record the date on which it completed the NICS check, or the wrong date was recorded. [*See, e.g.,* **Ex. 12** at 2, 5, 11.] For three buyers, the NICS transaction number was not recorded. [*Id.* at 23, 26.] As shown above, that information should have been placed in box 27.b. For three other buyers, Shooter's Supply didn't record the response from NICS, like box 27.c requires. [*Id.* at 32, 35.] And for seven other buyers, NICS responded to Shooter's Supply that it needed to delay providing the firearm. Shooter's Supply recorded in box 27.c that response by checking "Delayed" and writing the date on which the firearm could be transferred if NICS didn't provide a timely final answer, but then Shooter's Supply failed to record how that issue was resolved in box 27.d. [*Id.* at 41, 44, 47.]

Shooter's Supply was reprimanded in 2015 for failing to do these same things. [**Ex. 6** at 2.] Shooter's Supply stated in 2015 that it would change its practices to ensure compliance. It would complete Form 4473 for the buyer, not serve a second customer

until the first customer's Form 4473 was complete, and designate an employee to review the Forms 4473 and record firearm transfers. [*Id.*]

**Violation 7:    Shooter's Supply Failed to Properly Maintain its Acquisition and Disposition Record and Could Not Account for 12 Firearms.**

Shooter's Supply was required to maintain a record of all firearms it acquired and then disposed of. *See* 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.124(c)(3)(i). Shooter's Supply's acquisition records show that it purchased twelve more firearms than its disposition records reflect. [DN 1-1 at 7; **Ex. 2** at 3, 4-5.] That is, Shooter's Supply did not know the location of twelve firearms.[4] Shooter's Supply did not have ATF Forms 4473 to indicate the disposition of those firearms, nor did it make any entry into its acquisition and disposition record identifying the disposition of those firearms. As a result, Shooter's Supply had to report those missing firearms as lost or stolen, and it blamed this discrepancy on "inattentiveness and being very busy." [*Id.*] During the inspection, Shooter's Supply was actually unable track from acquisition to disposition 32 different firearms, but eventually it was able to reconcile the records for 20 of those missing firearms. [**Ex. 1** at 1 (listed as violation 4).]

In 2015, ATF found that Shooter's Supply lost track of nineteen guns. [**Ex. 6** at 1, 4.] Like in 2022, Shooter's Supply only discovered those firearms were missing when ATF inspected it. In 2015, Shooter's Supply stated it was going to address this violation by looking at purchasing a new electronic acquisition and disposition system and by

---

[4] Shooter's Supply reported to ATF after the inspection that it had located two or three of the missing firearms. [**Ex. 4** at 19:2-10.]

designating an employee to review the Forms 4473 and record firearm transfers. [*Id.* at 1.]

## ARGUMENT

### I.      Standards of Review.

Four factors need to be considered before resolving Shooter's Supply's request for a preliminary injunction under Fed. R. Civ. P. 65: (1) whether Shooter's Supply has a "strong likelihood" of prevailing on its claim that ATF was not authorized to revoke its FFL; (2) whether Shooter's Supply will suffer irreparable injury if the injunction is not issued; (3) whether others will be substantially harmed if the injunction is issued; and (4) whether the injunction advances the public interest. *Union Home Mortg. Corp. v. Cromer*, 31 F. 4th 356, 365 (6th Cir. 2022). These factors should be balanced, but the first factor is typically determinative. *Cameron v. Bouchard*, 815 F. App'x 978, 983 (6th Cir. 2020).

Shooter's Supply bears the burden of showing that a preliminary injunction should be issued. *Id.* (quoting other cases). Further, the proof Shooter's Supply must proffer to obtain a preliminary injunction is "'much more stringent than the proof required to survive a summary judgment motion' because a preliminary injunction is an extraordinary remedy." *McNeilly v. Terri Lynn Land*, 684 F.3d 611, 615 (6th Cir. 2012) (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). "In conducting the preliminary injunction analysis, the Court is not limited to the four corners of the complaint but rather may rely on affidavits and hearsay materials . . . if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Memphis*

11

*A. Phillip Randolph Inst. v. Hargett*, 485 F. Supp. 3d 1003, 1008 n.5 (M.D. Tenn. Sept. 28, 2020) (citing other cases).

As to the standard of review for Shooter's Supply's substantive claim, the issue is whether ATF's revocation is "authorized." *See Morgan*, 473 F. Supp. 2d at 762. ATF's decision is authorized if the evidence presented shows that Shooter's Supply "willfully" violated the GCA. A violation is "willful" if the licensee knows its legal obligations and purposefully disregards them or is plainly indifferent to them. *Garner*, 345 F. App'x at 71. "[A] single violation of the GCA is a sufficient basis for denying an application or revoking a firearms dealer's license." *Appalachian Res. Dev. Corp. v. McCabe*, 384 F.3d 461, 464 (6th Cir. 2004). The Court's review of ATF's decision that Shooter's Supply willfully violated the GCA is *de novo*, but a court should not analyze the evidence and decide whether it would have revoked Shooter's Supply's license. *Fulkerson v. Lynch*, 261 F. Supp. 3d 779, 783 (W.D. Ky. 2017) (quoting another source). Rather, the question for the Court is whether there is sufficient evidence to support the ATF's conclusion that the violation was "willful." *See id.* "[U]nder § 923(f)(3), the district court may only determine whether the Attorney General's decision was authorized; the selection of the penalty is a matter within the discretion of the Attorney General." *Willingham Sports Inc. v. Bureau of ATF*, 348 F. Supp. 2d 1299, 1312 (S.D. Ala. 2004) (quoting *Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 673 (N.D. Ill. 2004)).

12

II.      **Shooter's Supply Cannot Show Likelihood of Success on the Merits for its 18 U.S.C. § 923(f)(3) Claim.**

The most important factor to consider when considering a motion for preliminary injunction is the petitioner's likelihood of success on the merits. *Cameron*, 815 F. App'x at 983. Shooter's Supply cannot show likelihood of success on the merits because it willfully violated the GCA, and ATF is authorized to revoke its license.

A. Shooter's Supply Cannot Show Likelihood of Success on its Request for Review of ATF's Decision.

18 U.S.C. § 923(f) provides that the Attorney General may, after notice and opportunity for a hearing, revoke a license issued under the Gun Control Act of 1968. A license may be revoked if, among other things, the licensee has committed any willful violations of the GCA. *See* 18 U.S.C. § 923(e); 27 C.F.R. § 478.73. A licensee's repeated violations after it has been informed of the regulations and warned of violations establishes purposeful disregard or plain indifference. "Evidence of repeated violations with knowledge of the law's requirements has been held sufficient to establish willfulness." *See Stein's Inc. v. Blumenthal*, 649 F.2d 463, 468 (7th Cir. 1980) (citing *Lewin v. Blumenthal*, 590 F.2d 268 (8th Cir. 1979)); *Athens Pawn Shop Inc. v. Bennett*, 364 F. App'x 58, 60 (5th Cir. 2010); *Willingham Sports, Inc. v. BATF*, 415 F.3d 1274, 1277-78 (11th Cir. 2005). Plain indifference can be shown through circumstantial evidence like repeated violations, especially commission of the same violation after a prior warning, or a large number of violations. *See Simpson v. U.S. Att'y Gen.*, 913 F.3d 110, 115 (3rd Cir. 2019).

When a licensee commits repeat violations with undisputed knowledge of the statute's requirements, improvement—i.e., committing fewer violations—does not

13

mitigate the willful nature of the cited violations. *See Al's Loan Office Inc. v. U.S. Dep't. of Treasury*, 738 F. Supp. 221, 224-25 (E.D. Mich. 1990); *Athens Pawn Shop, Inc. v. Bennett*, 2008 WL 4951768, 2008 U.S. Dist. LEXIS 93022, at *7-9 (E.D. Tex. Nov. 14, 2008). "Moreover, as a district court pointed out in a similar case, 'while these repeat episodes could be characterized as minor or insignificant, these repetitions, nevertheless, undermine the petitioner's claim to have corrected his ways.'" *Proccacio v. Lambert*, 233 F. App'x 554, 559 (6th Cir. 2007) (quoting *Cisewski v. Dep't of Treasury*, 773 F. Supp. 148, 152 (E.D. Wis. 1991)). "Periodic compliance—that is, a licensee's occasional adherence to regulatory obligations—can support a finding of willfulness." *CEW Props v. U.S. Dep't of Justice*, 979 F.3d 1271, 1280 (10th Cir. 2020) (citing *Simpson*, 913 F.3d at 115-16).

Confirmation that a violation of the GCA is willful can also be found in the length of time that an entity has held its FFL. A long history of maintaining a license, like Shooter's Supply has, coupled with persistent violations of the GCA supports a conclusion that the violations were willful. *Id.* at 1281 (citing *3 Bridges, Inc. v. United States*, 216 F. Supp. 2d 655, 659 (E.D. Ky. 2002)); *see also Pinion Enters., Inc. v. Ashcroft*, 371 F. Supp. 2d 1311, 1317 (N.D. Ala. 2005); *Nationwide Jewelry & Pawn v. United States*, 455 F. Supp. 2d 1379, 1385 (M.D. Ga. 2006).

Furthermore, there is no *de minimis* exception to the GCA. *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 498 (7th Cir. 2006). "To the extent Plaintiffs claim that the violations were either minor, honest errors, or corrected afterward in good faith, the GCA does not provide a dispensation for 'minor' errors." *Gun Shop LLC v. U.S. Dep't of Justice*, 2011 U.S. Dist. LEXIS 59586, at *31-32 (E.D. Mo. June 3, 2011). If willful violations

14

of the GCA occur, even if they don't result in "illegal possession or usage of a firearm or an inability to track a firearm that has been sold," an FFL can be revoked. *Article II Gun Shop, Inc.*, 441 F.3d at 498. FFLs are routinely revoked when licensees fail to ensure that ATF Forms 4473 are filled out and when NICS checks are not completed. *See, e.g., id.*; *Shaffer v. Holder*, 2010 WL 1408829, 2010 U.S. Dist. LEXIS 31415, at \*32-41 (M.D. Tenn. Mar. 30, 2010); *Friedman's, Inc. v. McCabe*, 2010 WL 11693212, 2010 U.S. Dist. LEXIS 119856, at \*17-22 (M.D. Tenn. Nov. 10, 2010). "If ever there were a statutory scheme where a licensee should be obligated to 'sweat the details,' irrespective of how trifling they may appear, the Gun Control Act would appear to fit that bill." *Willingham Sports Inc.*, 348 F. Supp. 2d at 1309 n.14. "Without accurate and meticulous compliance with these 'paper work' requirements, the very foundation of this regulatory system would be compromised." *Nationwide Jewelry & Pawn* 455 F. Supp. 2d at 1385.

Of course, in this case, the violations at issue are not just related to paperwork. There are around one dozen guns that Shooter's Supply once had in its inventory and that it now cannot locate. [DN 1-1 at 7.] That's on top of the nineteen guns that were missing during the 2015 inspection. [**Ex. 6** at 1, 4.] Shooter's Supply's failures to maintain accurate acquisition and disposition records is a significant hindrance to ATF's goal of keeping firearms from getting into the wrong hands: "When the acquisition and disposition entries do not match a dealer's current inventory, the ATF is able to determine which firearms have gone missing. If the system's purpose is to keep guns out of the wrong hands, unaccounted-for weapons are, of course, a major problem." *Champion Arms, LLC v. Van Haelst*, 2012 U.S. Dist. LEXIS 141865, at \*2-3 (W.D. Wash.

15

2012).

Finally, a licensee is responsible for record keeping violations made by its employees. *Stein's, Inc.,* 649 F.2d at 468; *Arwady Hand Trucks Sales, Inc. v. Vander Werf,* 507 F. Supp. 2d 754, 762-63, n.12 (S.D. Tex. 2007) (citing *Fin & Feather Sport Shop, Inc. v. U.S. Treasury Dep't,* 481 F. Supp. 800, 806 (D. Neb. 1979)). Likewise, a licensee's GCA violations are not excused because it uses computer software that may make errors or allow for errors and omissions to occur. *See Sovereign Guns Inc. v, U.S. Dep't of Justice,* 2018 U.S. Dist. LEXIS 162827 at *13-14 (E.D.N.C. 2018). It is always the responsibility of the licensee, despite using technology, to ensure that the GCA's requirements are satisfied.

Here, Shooter's Supply was warned in 2015 that its noncompliance with the GCA could result in revocation of its FFL. [**Ex. 6** at 3.] At the same time that it was cited, Shooter's Supply affirmed that it had received an overview of its obligations under the GCA and was responsible for knowing and following the relevant laws and regulations. [*Id.* at 13-14.] Again in 2017, Shooter's Supply provided the same acknowledgement and affirmation alongside the 2017 Report of Violations. [**Exhibit 13**, Acknowledgement of Federal Firearms Regulations dated May 22, 2017 and Report of Violations (entered as Ex. 11 at February 23, 2023 hearing).] Then, in 2022, ATF found that Shooter's Supply had committed many of the same violations from 2015, as well as 2017. Shooter's Supply was knowledgeable of its obligations, and it failed—repeatedly—to comply with them. Shooter's Supply willfully violated the GCA and ATF's revocation of its FFL was authorized. Consequently, Shooter's Supply does not have a substantial likelihood

16

of prevailing on its claim and its motion for preliminary injunction should be denied.

*See, e.g.*, *Mountaineer Gun Sales, LLC v. ATF*, 2012 WL 194979, 2012 U.S. Dist. LEXIS 7228, at *18 (N.D. W. Va. Jan. 23, 2012) (denying licensee's motion for preliminary injunction because it "failed to make a clear showing that it would succeed on the merits"); *Semon v. Holder*, 2010 U.S. Dist. LEXIS 15659, at *10-13 (E.D. Tex. Jan. 28, 2010) (finding that record keeping deficiencies over the course of repeated inspections were willful violations of the GCA and denying a request for a preliminary injunction) *report and recommendation adopted* 2010 U.S. Dist. LEXIS 15611 (E.D. Tex. Feb. 18, 2010).

B.  The Harm to the Public Outweighs Any Harm to Shooter's Supply.

Even if Shooter's Supply could meet the first two elements for a preliminary injunction, its motion should still fail as it cannot demonstrate the remaining elements: (3) whether others will be substantially harmed if the injunction is issued; and (4) whether the injunction advances the public interest. *Cromer*, 31 F. 4th at 365.

ATF and other law enforcement agencies rely on accurate transaction records from licensees to trace firearms involved in crimes and to apprehend criminals. *See Abramski v. United States*, 573 U.S. 169, 182-83 (2014); (information contained in gun dealer's records establishes information about a gun buyer's identity and that helps fight serious crime). Shooter's Supply has admittedly failed to complete and maintain required records, which could hinder that process. Shooter's Supply also failed to conduct NICS background checks prior to transferring firearms, and it lost track of twelve firearms, most of which may be anywhere at this point. These violations make it

17

harder for ATF to carry out its mission of reducing violent crime and protecting the public.

Licensees, like Shooter's Supply, are subject to strict regulation because they deal in dangerous weapons. *Anzio Ironworks, Corp. v. Gerber*, 2022 WL 1500856, at *1 (M.D. Fla. May 12, 2022). The GCA tasks the Attorney General (and by delegation ATF) with ensuring that licensees do not abuse their privileges by willfully violating the gun laws and regulations. Allowing Shooter's Supply to continue its operations despite admitting to repeated violations of the GCA would be a disservice to the public.

### III.    The Constitution's Excessive Fines Clause is Inapplicable.

Shooter's Supply's Excessive Fines Clause argument is undeveloped and does not even address the fact that no monetary penalty has been assessed. Neither does Shooter's Supply address the fact that ATF has revoked numerous other FFLs for the same kinds of conduct for decades and no case has been located in which the Excessive Fines Clause was raised as an issue. Furthermore, that Shooter's Supply feels like revocation of its FFL is "punishment" isn't the question. Instead, the issue is whether the purpose of the sanction is remedial or whether it is intended to have a "deterrent or punitive purpose[]." *Sessler v. C.C.C.S.E.A.*, 2014 U.S. Dist. LEXIS 90922, at *11-12 (N.D. Ohio July 3, 2014) (quoting *Austin v. United States*, 509 U.S. 602, 609-10 (1993)). If the latter, then the Excessive Fines Clause is inapplicable. *Id.* In other contexts, it is recognized that revocation of a license isn't punishment, but a remedial measure taken because the licensee has shown it cannot be trusted with the privilege of holding a license. *See Contemporary Media, Inc. v. FCC*, 214 F.3d 187, 199 (D.C. Cir. 2000) (citing

18

other cases). Also supporting the conclusion that revocation of Shooter's Supply's license is remedial instead of punitive is the fact that criminal charges could have been sought under 18 U.S.C. § 922(m) or § 924(a)(5). Congress provided ATF discretion to address GCA violations under a remedial scheme—revocation of an FFL—or under a punitive scheme—criminal charges. Here, ATF elected to move under the remedial scheme and revoke Shooter's Supply's FFL. Thus, the Excessive Fines Clause is inapplicable to this matter.

### IV.   The Second Amendment and *Bruen* Do Not Address the Commercial Sale of Firearms.

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2127 (2022), the Supreme Court held that to establish a Second Amendment violation, a plaintiff must first show that the regulation at issue implicates "the Second Amendment's plain text." *Id.* at 2129. If a plaintiff meets that threshold requirement, the government is then required to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126.

Here, Shooter's Supply fails to meet the threshold requirement. The "plain text" of the Second Amendment is silent as to the commercial sale of firearms, as numerous courts have recently held. *United States v. Kazmende*, 2023 WL 3872209, 2023 U.S. Dist. LEXIS 100040, at *13 (N.D. Ga. May 17, 2023) ("The Court agrees with the Government that the Second Amendment, which protects 'the right of the people to keep and bear Arms,' simply does not extend to the commercial sale of firearms."); *United States v. Flores*, 2023 WL 361868, 2023 U.S. Dist. LEXIS 10769, at *6-13 (S.D. Tex. Jan. 23,

19

2023) (holding that the Second Amendment does not protect the right to commercially deal in firearms); *United States v. King*, 2022 WL 17668454, 2022 U.S. Dist. LEXIS 224929, at *7-8 (E.D. Pa. Dec. 14, 2022) (finding that "the Second Amendment does not protect the *commercial* dealing of firearms"); *United States v. Tilotta*, 2022 WL 3924282, 2022 U.S. Dist. LEXIS 156715, at *13-15 (S.D. Cal. Aug. 30, 2022) (same). Those cases find support in the *Bruen* decision, as well as *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008). In his *Bruen* concurrence, Justice Kavanaugh noted that the Second Amendment does not prohibit the imposition of "laws imposing conditions and qualifications on the commercial sale of arms." *Id*. at 2162 (quoting other cases).

Shooter's Supply's argument that *Bruen* has some impact on this matter is meritless. *Bruen*, by its very language, stated that it has no impact on the ATF's application of 28 U.S.C. § 923(e). Petitioner cannot prevail on this claim, so a preliminary injunction should not be issued.

## CONCLUSION

For the foregoing reasons, Shooter's Supply's motion for preliminary injunction should be denied.[5]

---

[5] So the Court has for review all of the exhibits that were entered at the February 2023 hearing, Respondent attaches the additional documents:
- **Exhibit 14**, Notice of Hearing (entered as Ex. 3 at February 23, 2023 hearing);
- **Exhibit 15**, Firearms Qualification Report (entered as Ex. 9 at February 23, 2023 hearing);
- **Exhibit 16**, Federal Firearms Licensee Theft/Loss Report (entered as Ex. 12 at February 23, 2023 hearing);
- **Exhibit 17**, Shooter's Supply's Responses (entered as Petitioner's Ex. 1 at February 23, 2023 hearing).

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

/s/ *Timothy Thompson*
Timothy D. Thompson
Assistant United States Attorney
717 West Broadway
Louisville, KY 40202
(502) 582-6238
Timothy.thompson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023, I electronically filed the foregoing with the

clerk of the court by using the CM/ECF system, which automatically provides notice to

all counsel of record.

/s/ *Timothy Thompson*
Timothy D. Thompson
Assistant United States Attorney